UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cr-107-MOC-DCK-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| AMINTA A. SMITH, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure Rule 29. (#42).

**I.  Background**

On March 18, 2019, Defendant was charged by Superseding Indictment with twenty counts of aiding and assisting in the filing of false tax returns and three counts of filing a false tax return. (Doc. No. 27). Jury selection was completed on May 20, 2019, and the presentation of evidence began on May 28, 2019. Following the close of the Government's case, on May 29, 2019, Defendant moved for judgment of acquittal. The Court heard oral argument and denied Defendant's motion. On May 30, 2019, Defendant was convicted of all twenty-three counts. (Doc. No. 39). On June 13, 2019, Defendant filed the instant Motion, moving for a judgment of acquittal as to Counts Twenty One through Twenty Three of the Superseding Indictment.[1] (Doc. No. 42).

---

[1] Defendant made no such motion as to Counts One through Twenty of the Superseding Indictment.

1

**II.     Standard of Review**

When considering a post-verdict motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court assesses whether, taking the evidence in the light most favorable to the Government, a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.  See United States v. Higgs, 353 F.3d 281, 313 (4th Cir. 2003) (holding that a conviction must be sustained if there is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt") (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).  The court does not weigh the credibility of witnesses but accepts any such determinations made by the jury which are necessarily resolved by the verdict.  See United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997) (holding that credibility determinations are reserved for the jury, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe) (internal quotation marks omitted); United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983).  In making a Rule 29 motion, "[a] defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'"  United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted).  "Reversal for insufficient evidence is reserved for the rare case 'where the prosecution's failure is clear.'"  Id. (quoting Burks v. United States, 437 U.S. 1, 17 (1978)).

**III.    Discussion**

After hearing the evidence, the jury convicted Defendant of Counts Twenty One through Twenty Three of the Superseding Indictment, which alleged violations of 26 U.S.C. § 7206(1). (Doc. No. 27).  Defendant argues that the Government failed to introduce evidence of any direct income to Defendant in 2013 and 2014 and that the Government failed to prove that Defendant

was the owner of Smith Tax and Insurance and required to report the business and its income on her tax return.  Defendant further argues that the Government failed to follow requisite steps for a bank deposits method of proof for the 2015 tax year to establish total income.  For the following reasons, the motion will be denied.

**A. 2013 and 2014 Tax Returns (Counts Twenty One and Twenty Two)**

In its Superseding Indictment, the Government alleged that Defendant willfully filed false tax returns in 2013 and 2014 when she: (1) failed to disclose that she was engaged in the operation of a business activity from which she derived gross receipts, knowing that she was engaged in the operation of a business activity from which she derived gross receipts, specifically her tax preparation business; and (2) reported her total income in 2013 and 2014 on Lines 15 and 22 was $22,012 and $24,341, respectively, where as she knew her total income on Lines 15 and 22 was substantially greater.  (Doc. No. 27).  At trial, as part of the defense, Defendant attempted to categorize three of Defendant's businesses as separate from one another and subject to different reporting requirements.  The Government introduced, however, more than sufficient evidence for a reasonable juror to find that these three businesses—Touch by Angels Tax Service, Touch by Angels Accounting, and Smith Tax and Insurance—were different in name only and all reflected the same preparation business, for which Defendant was the owner and which she should have reported on her 2013 and 2014 tax returns.

At trial, the Government called Kristy Morgan, an IRS Service Center Representative, who testified that Defendant applied for and was rejected for an EFIN in the name of Touch by Angels Tax Services in February 2010 for lack of suitability, and that an application referencing the name of Ben Smith applied for an EFIN in the name of Touch by Angels Accounting Services in October 2010 and Smith Tax & Insurance Group, LLC in December 2012.  (Govt.

Ex. ("GX") GX 16, 18, 74, 76, 78). Further, the Government, through Ms. Morgan, offered Exhibit 75, which is a Personal Associated Application for Aminta Smith. On this document, Smith Tax & Insurance Group is listed as an associated application for Defendant and she is listed as a "Delegated User." (GX 75).

The Government also called Meshawn Jean-Louis from Santa Barbara Bank and Trust, who testified that the purported EFIN account holder in 2013 and 2014 for the Touch by Angels Accounting Services account was Defendant. (GX 89A and 89B). Ms. Jean-Louis further explained the difference between an EFIN holder and a contact person, and testified that while Ben Smith was at certain times listed as the contact person for the business, from 2013–2014, the EFIN holder, perceived by Santa Barbara to be the "owner" of the business account, was Defendant.

The Government also admitted Ben Smith's 2013 and 2014 tax returns into evidence and Ms. Morgan testified that Ben Smith did not claim any Schedule C tax preparation business in 2013 and 2014, and that Defendant is listed as the paid preparer. (GX 302 and 303). Ms. Morgan also testified that in 2015, Ben Smith did not file any tax return. (GX 314). The Government further called IRS Special Agent Nicholas Pompei, who testified that when he interviewed Defendant, she stated that she was the owner of her tax preparation business called Touch by Angels, which she had started in October 2009, and that it was a sole proprietorship. Importantly, Defendant failed to report any iteration of her tax preparation business in 2013 and 2014, including the version she claims was actually hers, Touch by Angels Tax Services, and admitted at trial to being the owner of a tax preparation business, a sole proprietorship, since at least 2009. (Def. Ex. 11). On these facts alone, a reasonable juror could convict Defendant on Counts Twenty One and Twenty Two. See Griffin v. United States, 502 U.S. 46, 49 (1991)

(when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, the verdict stands if the evidence is sufficient as to any one of the acts charged).

Defendant includes lengthy discussions of alter-ego theory, piercing the corporate veil, and the nature of LLCs in her Motion. None of these arguments undermine the evidence the Government established at trial. Defendant admitted to owning a tax preparation business, her name is on numerous documents and records for each alternate "name" for that business, and her clients testified that they paid her to prepare their returns in the years in question. This evidence is sufficient to prove that in 2013 and 2014 she both underreported her total income and failed to report that she was engaged in the operation of a business activity from which she derived gross receipts–and a reasonable juror could have reached this conclusion.

Defendant argues that the Government introduced "no evidence of any direct income" to Defendant for tax years 2013 and 2014. (Doc. No. 43). The evidence at trial, however, and specifically the testimony of the five client witnesses at trial, proved that Defendant held herself out as the owner of a tax preparation business and that she received income from that business for 2013 and 2014. Each of the five clients testified that Defendant prepared their 2013 and 2014 tax returns, as well as their 2011 and 2012 tax returns, and that her preparation fee was taken out of their refund each year.[2]

Despite many of the clients' returns listing "Smith Tax and Insurance" as the preparation business, the clients testified that they knew the business as "Touch by Angels," and that they knew only Defendant as the one who prepared their returns. The fact that these names were interchangeable and all reflected the same business was buttressed by the rebuttal evidence

---

[2] The preparation fees for the 2012 and 2013 tax returns would appear on Defendant's 2013 and 2014 tax returns, as she would have prepared those returns in the subsequent year for her clients.

introduced by the Government, namely a letter in which Ben Smith, purported "Co-Owner" of Smith Tax and Insurance, noted that clients also knew the business as "Touch by Angels Tax Services." (GX 93). Further, Defendant introduced evidence establishing that she was the owner of Touch by Angels Tax Services. (Def. Ex. 11). As noted in rebuttal closing argument, in 2013 and 2014, Defendant earned fees associated with the five client witnesses at trial, yet nowhere on her 2013 or 2014 tax returns is Touch by Angels Tax Services reported. Based on this evidence alone the jury could have found her guilty of Counts Twenty One and Twenty Two. (GX 84 and 85) (showing that in 2013 and 2014, Defendant earned more than $1,460 and $1,600 in preparer fees just from the five clients who testified at trial).

Again, the Government introduced Santa Barbara records for 2013 and 2014, showing that Defendant's tax preparation business received substantial gross receipts for those years, none of which were reported on Defendant's tax returns. (GX 84 and 85). At trial, Revenue Agent Teresa Archie explained how flow-through lines work and how a false entry on Line 12, the business income line (created by a failure to report Schedule C gross receipts), would flow through to the total income line on the Form 1040. A reasonable juror could find from the evidence presented at trial that Defendant's failure to report any gross receipts from her tax preparation business for 2013 or 2014 made her total income on Line 22 for each of those years false as to a material matter. Just as Defendant's creation of false Schedule C businesses on her clients' returns made their total income lines false, Defendant's failure to report her Schedule C business on her own tax returns made her total income lines false. The Government introduced more than sufficient testimony and documentary evidence for a reasonable juror to reach this conclusion. See United States v. Holladay, 566 F.2d 1018, 1020 (5th Cir. 1978) (per curiam).

A reasonable juror could find the evidence adduced by the Government showing Defendant's involvement, authority, and ownership of the business, proved that all three supposed "sub-entities" were in fact one business, that Ben Smith was a mere nominee for the Defendant to hide behind, and that Defendant was, as she stated to law enforcement when interviewed, the owner of the business, and the one required to report it on her tax returns.

Alternatively, a reasonable juror could find that Defendant's own admission that she was the sole owner of a tax preparation business for the years in question, combined with the admitted tax returns which show that she never reported that business, provided sufficient evidence on its own to convict her of Counts Twenty One and Twenty Two. Finally, a reasonable juror could have also found, based on the evidence admitted at trial, that Defendant's failure to report all of her tax preparation activities resulted in a materially false total income line on her tax returns, and this conclusion would independently support a conviction on Counts Twenty One and Twenty Two. In sum, the Government offered sufficient evidence to support the verdict as to these counts.

**B. 2015 Tax Return (Count Twenty Three)**

For Count Twenty Three, the Government alleged that Defendant willfully filed a false tax return which underreported her gross receipts on Line 1 of the Form Schedule C attached to her 2015 return. (Doc. No. 27). Specifically, the Government alleged that Defendant reported $150 in gross receipts or sales for her business in 2015, when she in fact received well over $100,000 in fees that year. Defendant contends that the evidence at trial did not support the jury's finding as to Count Twenty Three. Most, if not all, of Defendant's arguments regarding this tax return center on whether the Government showed income to Defendant and whether the Government conducted a bank deposits analysis for that income.

7

Defendant's arguments are without merit. The Government met its burden of proving that Defendant underreported gross receipts or sales from her tax preparation business. The Government introduced records and testimony from Santa Barbara Bank and Trust, which showed that Defendant was the primary contact person for the account, and that the bank account for this account holder was the New Dominion bank account over which Defendant had sold signatory authority. (GX 88D, 89D). The Government also showed the total fees paid to this bank account were in excess of $100,000. (GX86).

The Government further introduced bank records showing Defendant was the sole signatory on the business bank account for Smith Tax and Insurance in 2015, and a bi-weekly paycheck to Ben Smith from Smith Tax and Insurance, signed by Defendant and containing the inscription "OK per Aminta Smith." Revenue Agent Theresa Archie also testified that the fees from Santa Barbara Bank and Trust were deposited into this account and there were transfers of funds from the Smith Tax & Insurance bank account to Defendant's personal bank account where she used those funds for personal items. (GX 80 and 80A).

Special Agent Pompei testified that Defendant was interviewed on May 14, 2015, by the IRS, and informed that she was the subject of a criminal investigation and that a search warrant was being executed at her place of business. The Government introduced bank records showing that on that same day, Defendant withdrew or transferred $30,000 from the business bank account for Smith Tax and Insurance into her personal bank account. Defendant argues that "being a signatory on an account is not the same as having ultimate authority to determine the disposition and use of funds." (Doc. No. 43). However, the evidence at trial showed that Defendant did have that authority, as Defendant used her exclusive authority to issue paychecks to her purported boss, Ben Smith, and to withdraw substantial sums of money when alerted to a

criminal investigation against her. The evidence of the flow of money and Defendant's dominion and control over the funds is further proof that she was the owner of the tax preparation business, no matter what nominee name it went by.

The client testimony at Defendant's trial further supports the jury's finding on Count Twenty Three. Defendant reported a nominal amount, only $150 of gross receipts, on her Schedule C for 2015. Based only on the testimony and tax returns of the five clients at trial, Defendant received preparation fees (gross receipts) in excess of this number. In fact, any one of the client witnesses' returns in 2015 would prove Defendant's return was false, as she routinely charged between $200 and $400 to prepare one tax return. (GX 86 (showing that the five testifying clients were charged more than $2,000 in total to prepare their 2015 tax returns.)). See United States v. Vario, 484 F.2d 1052, 1053-54, 1056 (2d Cir. 1973) (where the defendant failed to report gross income from a gambling or "policy" operation or that he was engaged in such an operation, and where the government, through federal agents and "policy" members, established that the defendant was active in the organization and that it produced gross income he failed to report, holding that evidence that the defendant paid for police protection was admissible to prove that the defendant had sufficient income from the operation to pay for the protection, that he had a source of income he was concealing, and that there was a relationship between the defendant and his coconspirator).

As with Counts Twenty One and Twenty Two, a reasonable juror could also infer that Defendant was the actual owner of all three purported permutations of her tax business, based on the documentary evidence and testimony described above, and that she was responsible for reporting the income on her tax returns. Such conclusion would also support a conviction as to Count Twenty Three of the Superseding Indictment.

9

Thus, the extensive bank deposits analysis Defendant argues should have been undertaken does not bear on the actual charges brought against Defendant, or the evidence adduced at trial. The Government did not allege in Count Twenty Three, or set out to prove, that Defendant underreported her total income, and its theory did not rest on the method of proof averred by Defendant. Rather, the Government charged that Line 12, gross receipts, was false, and was obligated only to prove that Defendant, before any business expenses or other claimed deductions, had a business with gross sales or receipts in excess of $150, and willfully failed to report the correct amount on her return. The Government proved this at trial through the introduction of evidence of specific items of income, as discussed above, all of which proved gross receipts from preparation fees in excess of the $150 that Defendant reported in 2015. Accord United States v. Siravo, 377 F.2d 469 (1st Cir. 1967) (where the defendant did not report gross receipts from a business he operated and was charged with failure to disclose substantial gross receipts from a business, rejecting defendant's argument that his failure to attach a Schedule C to his return reporting his gross receipts was not a false statement, stating that "a return that omits material items necessary to the computation of income is not 'true and correct'").

In sum, the testimonial and documentary evidence admitted during the trial, taken in the light most favorable to the Government, supported the jury's verdict finding Defendant guilty on all counts contained in the Superseding Indictment, particularly Counts Twenty One through Twenty Three. Moreover, the evidence admitted during the trial did not weigh heavily against the verdict such that a miscarriage of justice occurred. Instead, the evidence affirmatively supported the guilty verdict. For these reasons, the Court denies Defendant's motion for judgment of acquittal.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure Rule 29, (Doc. No. 42), is **DENIED**.

Signed: December 12, 2019

Max O. Cogburn Jr.
United States District Judge