UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cr-107-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| AMINTA SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant Aminta Smith's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 86). The Government has responded in opposition to the motion. (Doc. No. 91). For the following reasons, Defendant's motion will be **DENIED**.

**I.    BACKGROUND**

**A.  Defendant's Conviction**

Defendant prepared false tax returns for clients of her tax preparation business between 2011 and 2016. (Doc. No. 52 at 4). She was first rejected for an Electronic Filing Identification Number (EFIN) due to her criminal history, then obtained two EFINs in the name of a nominee. (Doc. No. 65). She prepared false tax returns that generally included false Schedule C income and expenses, false wages, and false education credits, so that her clients fraudulently qualified for large refundable tax credits. (Id.). Her clients received large, fraudulent tax refunds as a result. (Id.). Defendant kept a portion of the tax refunds as her fee, but did not report most, if not all, of these fees on her personal income tax returns. (Id.).

During the investigation, Defendant prepared a false tax return for an IRS undercover agent. (Id.). The agent gave Defendant a Form W-2 and her dependent information. (Id.).

1

Defendant prepared a tax return for the agent that included additional false W-2 wages that had not been provided by the agent nor inquired about by Defendant. (Id.). She charged the agent almost $500 to prepare this return. (Id.).

Additionally, Defendant filed false personal tax returns for tax years 2011, 2012, 2013, 2014, and 2015. (Id.). She substantially underreported her total income from her tax preparation business and failed to file a Schedule C for that business in 2011, 2013, and 2014. (Id.). Her business generated in fees $48,862.36 in 2011, $93,430.87 in 2013, and $100,675.27 in 2014. (Id.). She filed a Schedule C reporting her business on her 2012 and 2015 tax returns but reported gross receipts of only $500 and $150, respectively. (Id.). To the contrary, records established that her tax preparation business generated in fees $90,523.77 in 2012 and $127,981.59 in 2015. (Id.).

At Defendant's trial, five of her former clients testified about the preparation of their tax returns for tax years 2011 through 2014. (Id.). They all identified Defendant as their return preparer. (Id.). They consistently testified that they did not provide Defendant with information or documentation to support the false Schedule C information and/or education expenses that appeared on their returns. (Id.). Additionally, they testified that Defendant did not review their completed returns with them, and they were not aware of the false items on their returns. (Id.).

The tax loss associated with false refundable education credits for any tax returns filed by Defendant during tax years 2010 through 2014 was $846,515. (Id.). The tax loss associated with her clients, whose returns were charged in the superseding indictment, including additional years not charged, along with several other clients that were interviewed as part of the investigation, was $118,452. (Id.). The tax loss for the counts of conviction and relevant conduct resulting from Defendant's filing false individual income tax returns for 2011 through 2015 was $144,390.

2

Therefore, the total tax loss resulting from Defendant's aiding, assisting, procuring, or advising in the preparation and assistance of false tax returns and filing false personal income tax returns was $1,109,357. (Id.).

Defendant was charged by superseding bill of indictment on March 28, 2019, with twenty counts of aiding and assisting in the filing of false tax returns, in violation of 26 U.S.C. § 7206(2), and three counts of filing false individual income tax returns, in violation of 26 U.S.C. § 7206(1). (Doc. No. 27). She was found guilty of all counts on May 30, 2019, after a multi-day trial. (Doc. No. 52).

On March 24, 2021, this Court varied downward and sentenced Defendant to 30 months of imprisonment on each count to be served concurrently. (Doc. No. 70). Defendant appealed, and on November 15, 2022, the Fourth Circuit Court of Appeals issued an unpublished opinion affirming Defendant's conviction, but the Court reversed and remanded the imposition of the supervised release condition requiring Appellant to refrain from going to places where she knows controlled substances are illegally sold, used, or distributed and the order of immediate payment of restitution. (Doc. No. 101). The court's mandate issued on December 7, 2022. (Doc. No. 102).

**B. Defendant's Motion for Compassionate Release**

Defendant is serving her sentence at Alderson FPC, with an anticipated release date of October 3, 2023. She has served less than half of her sentence. She filed her Motion for Compassionate Release with this Court on February 22, 2022. (Doc. No. 86). In the Motion, she states that prison inmates are very vulnerable to COVID-19 and mentions that she suffers from numerous medical conditions. (Id.). She also states that her teenage children need her, and her daughter has had panic attacks since her incarceration. (Id.). Additionally, she states that her

3

Case 3:18-cr-00107-MOC-DCK   Document 110   Filed 01/18/23   Page 3 of 10

grandfather is the children's caretaker and is ill and unable to take care of them. (Id.). She argues that she deserves compassionate release because she has made positive strides that this Court did not consider. (Id.). She informed her institution that she received a dose of the Johnson & Johnson COVID-19 vaccine in May of 2021, before her incarceration began, although she did not bring her vaccine card to the prison. (Gov't Ex. 1). On February 9, 2022, she was offered the Moderna booster shot by Alderson FPC but declined to receive it. (Id.).

On November 20, 2021, the warden of Alderson FPC received Defendant's request for compassionate release based on her family situation and health issues. Her request for a reduction in sentence was denied on November 26, 2021.

## II. DISCUSSION

Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

Although not binding on this Court, the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability

4

of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of her term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in section 1B1.13 and that a district court may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c) sentences and the extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act." 981 F.3d at 286. The court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, considering, for example, the length of time already served, any rehabilitative efforts made during the defendant's time in the BOP, the defendant's prior criminal history, and the defendant's age at the time Defendant committed the offenses. See id.

Defendant is 35 years old and states that she suffers from bipolar disorder, GERD, arthritis, asthma, lactose intolerance, restless leg syndrome, vitamin D deficiency, anemia, PTSD, clinical depression, fibromyalgia, is severely obese, and had elevated liver levels in 2009 and was borderline diabetic in 2000. (Doc. No. 86). Her medical records indicate that she has denied having diabetes to medical staff at her institution. (Govt' Ex. 1). While these records show that she reported having bipolar disorder, the providers also noted that she could not

5

describe her symptoms or episodes and did not report any of the hallmark symptoms. (Id.). She did not mention having bipolar disorder to the United States Probation Office when interviewed for her Pre-Sentence Report. (Doc. No. 52 at 15). Her BOP medical records also indicate that she reported being diagnosed with asthma after being infected with COVID-19 in 2020, but she did not bring her inhaler with her. (Gov't Ex. 1). She exhibited questionable effort on her first spirometry test and moderate effort on the second. (Id.). Her medical records do not show whether her asthma is moderate to severe. (Id.). However, she certainly presents the COVID-19 risk factor of obesity and may have additional risk factors of moderate to severe asthma and mood disorders. (Id.). Regardless, she no longer presents an "extraordinary and compelling reason" because she appears to have been fully vaccinated. She reported to BOP medical staff that she received a dose of the COVID-19 vaccine in May 2021 before she entered the facility. (Id.). Additionally, she was offered a Moderna COVID-19 booster shot, but she declined it in February of 2022. (Id.).

Defendant has not shown extraordinary and compelling reasons that warrant granting her early release. Although Defendant mentions a handful of medical conditions, she has failed to establish that they are causing serious deterioration in her condition or limiting her ability to function in prison. To the contrary, nothing in her medical records indicates that she is unable to engage in the normal activities of daily living at her facility. She has not offered any example of how she cannot provide self-care in her institution.

Additionally, Defendant suffered from many of her current medical ailments at the time that this Court sentenced her to 30 months in prison. Her Presentence Report notes that she reported before sentencing that she suffered from severe migraine headaches, restless leg syndrome, insomnia, arthritis, and PTSD. (Doc. No. 52). Defendant is receiving attentive care at

6

her institution where her conditions are well controlled by medication and monitored by medical staff. (Ex. 1). She takes medication for a mood disorder and headaches. (Id.). She was given a chest x-ray because she reported having asthma. (Id.).

Moreover, Defendant was offered the flu and COVID-19 vaccines while at Alderson FPC, she has declined them. In short, Defendant has received appropriate and attentive care while in BOP's custody and will continue to do so. Although she faces health issues, she has not met her burden to show that her condition is so debilitating as to warrant a reduction in her sentence. See United States v. Ayon-Nunez, No. 1:16cr00130, 2020 WL 704785 (E.D. Cal. Feb. 12, 2020); United States v. Crawford, No. 1:07cr371-1, 2019 WL 6615188 (M.D.N.C. Dec. 5, 2019).

Defendant also argues that her early release is warranted because of the incapacitation of her children's caregiver. She states that her biological grandfather is the current caretaker of her children but is ill and unable to take care of them. (Doc. No. 86). She states that her son dropped out of school when she was sentenced, and her daughter has been having panic attacks and personality changes since her incarceration. (Id.). Her grandfather's most recent medical record provided by Defendant is from November 16, 2021, and notes that he was able to live alone with some medical equipment and occasional assistance from his daughters. (Doc. No. 86-1 at 55–57). His records do not mention Defendant's children living with him although Defendant reported this to BOP in August 2021. (See Doc. No. 84). Defendant does not show how her grandfather's condition has worsened to the point that he would be unable to care for her eighteen-year-old son and sixteen-year-old daughter. Instead, she only alleges that he cannot help her daughter with homework, which does not make him an unfit care provider.

Moreover, Defendant does not demonstrate that her grandfather is needed as her

children's caretaker. In May of 2021, Defendant's self-surrender to the Bureau of Prisons was delayed to August of 2021 so that she could assist with her son's legal emancipation so that he could care for his younger sister. (Doc. Nos. 76, 78). She requested that her report to BOP be delayed a second time, from August to November 2021, due to delays in her son's emancipation process. (Doc. No. 82). Her motion to extend time also stated that her daughter would be eligible for emancipation in September of 2021 and that no issues were anticipated with her emancipation. (Doc. No. 82).

Even if neither of Defendant's children were emancipated, her son has since reached 18 years of age and is an adult now and is able to care for himself and his sister as planned by Defendant before she started serving her sentence. (See Doc. Nos. 76, 82). Additionally, Defendant argued at sentencing that her children had no caretaker and needed her, and the Court was aware of their medical history as noted in her Presentence Report. (Doc. No. 81). The Court overruled her motion for a departure based on her family circumstances and sentenced her to thirty months of imprisonment. (Id.). Because Defendant has not established an extraordinary and compelling reason warranting a sentence reduction, she is not entitled to compassionate release under § 3582(c)(1)(A).

This Court must consider all pertinent circumstances, including the § 3553(a) factors and possible danger to the community. Here, Defendant has served less than half of her 30-month sentence. Such a sentence reduction would fail to afford adequate deterrence, promote respect for the law, and provide just punishment. "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation omitted). The nature and circumstances of Defendant's offense

warrant her full thirty-month sentence of incarceration. Her criminal conduct spanned four tax seasons and involved at least hundreds of tax returns. She ensured that she was not left out of the benefit of her fraudulent behavior and failed to report the majority of her income earned from tax preparations on her personal tax returns.

She took advantage of her uneducated clients that relied on her specialized tax knowledge and trusted her to accurately prepare their tax returns. Additionally, many of her clients were unaware of the excessive fees she paid herself out of their false tax refunds. (Doc. No. 65). Not only did the federal government lose the money she stole, but her abuse of the system put its integrity at stake, a detriment to such a system that relies on voluntary compliance by taxpayers. In fact, the loss caused by Defendant was understated because it did not include calculations for the false Schedule C businesses. (Id.).

Nor do Defendant's history and characteristics warrant a reduction in her sentence. She was convicted of resisting a public officer in 2009 and placed on probation, which was revoked six months in. (Doc. No. 52 at 12). While on pretrial supervision in the instant case, her probation officer filed a violation report because Defendant had failed to report contact with a law enforcement officer and had engaged in unauthorized travel outside the district, which resulted in a verbal reprimand. (Id. at 4). She has already been disciplined once while incarcerated for being in an authorized area on January 30, 2022. (Gov't Ex. 1).

As the Court noted at Defendant's sentencing, her full 30-month sentence is necessary to deter others from preparing false tax returns and underreporting their income. (Doc. No. 81). Moreover, Defendant was already given the benefit of a below guideline range sentence and does not deserve any further reduction. The Court considered her family responsibilities, adjustment while on pretrial release, efforts to rehabilitate herself, and the need to avoid unwarranted

9

sentencing disparities in crafting her thirty-month sentence. (Doc. No. 71).

Here, this Court properly evaluated the Section 3553(a) factors and her circumstances, including many of the same medical conditions that she complains of today and her family situation, when it sentenced her in 2021 and found that a 30-month sentence was appropriate. Release at this point and a reduction in her sentence is not warranted by her conduct nor her circumstances.[1] For all these reasons, the Court will deny Defendant's motion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 86), is **DENIED**.

Signed: January 18, 2023

Max O. Cogburn Jr
United States District Judge

---

[1] To the extent that Defendant moves this Court to place her on home confinement to serve the remainder of her prison sentence, this Court does not have authority to grant the request.